**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

```
FRANK FERETTI,                    :
  plaintiff,                      :
                                  :
v.                                :   Civil No. 3:13CV00753(AVC)
                                  :
CAROLYN W. COLVIN,                :
ACTING COMMISSIONER OF THE        :
SOCIAL SECURITY ADMINISTRATION,   :
  defendant.                      :
```

**RULING ON THE PLAINTIFF, FRANK FERETTI'S, MOTION TO
REVERSE AND THE DEFENDANT'S MOTION TO AFFIRM THE DECISION
OF THE COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION**

This is an action seeking a review of a denial of an application for social security benefits.[1] It is brought pursuant to 42 U.S.C. §§ 405(g) and 1382(c)(3). The plaintiff, Frank Feretti, alleges that he is entitled to receive disability insurance benefits ("DIB").

Feretti now moves for an order reversing the decision of the Commissioner of the Social Security Administration ("Commissioner") that denied his claim to DIB.  In the alternative, Feretti seeks an order remanding his case for a

---

[1]  Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]."  42 U.S.C. § 405(b)(1). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs").  See C.F.R. §§ 404.929 et seq. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council.  See 20 C.F.R. §§ 404.967 et seq.  Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

rehearing.  The Commissioner, in turn, has moved for an order affirming his decision.

The issues presented are whether: (1) the ALJ's residual functional capacity ("RFC") determination is supported by substantial evidence; (2) the agency fulfilled its duty to develop the record; (3) the ALJ's decision comports with the "treating physician rule;" and (4) the plaintiff has established that he meets or equals any listed impairment.

For the following reasons, the plaintiff's motion for an order reversing or remanding the decision of the Commissioner is denied, and the defendant's motion for an order affirming the decision of the Commissioner is granted.

## FACTS

An examination of the record discloses the following:

Feretti was 40 years old on the date of the ALJ's decision.[2] He completed high school and has previous work experience as a New York City police officer for 14 years. He is a resident of Trumbull, Connecticut.  Feretti asserts disability based on bilateral knee impairments, history of work-related knee injury, history of healed ankle injury; and a non-severe shoulder injury.[3]

---

[2] Feretti's date last insured (DLI) is December 31, 2010.

[3] Feretti's worker's compensation file also notes days off due to a finger injury.

Feretti's original injuries consisted of falling on his feet from a height of about six feet in 1994 and being pushed by an individual into a desk in 2002.

Fertti underwent two main left knee surgeries, one in September of 1994 and another in May, 2003. The 2003 surgery was to improve extension in his left knee joint.

In 2001, Feretti's treating surgeon, Scott Rodeo, M.D., noted that there were no abnormalities on x-rays of the right knee, that the knee showed no swelling, and that Feretti reported that it was slowly improving. In September, 2002, Feretti underwent a minor surgery on his right knee.

Feretti's rheumatologist, Bruce Stein, M.D.,[4] diagnosed him with osteoarthritis in 2010. Stein characterized the overall severity as "moderate." He noted that Feretti had no material difficulty with, or limitation, upon exercise and observed normal muscle tone in the legs, good muscle strength and no muscle atrophy. In 2012, Stein characterized his overall osteoarthritis as "mild to moderate" and found no indication that there was any deterioration that would require surgery.

Neither Stein nor Rodeo noted that Feretti's level of severity for his bilateral knee impairments required a cane or other assistive device to walk on level ground.

---

[4] Dr. Stein's practice is located in Floral Park, New York.

The two state agency reviewing physicians, Maria Lorenzo, M.D., and Joseph Connolly, Jr., M.D., stated that the April 2010 x-rays of Feretti show "mild to moderate [osteoarthritis]." Both Lorenzo and Connolly also found that Feretti did not meet any listed impairment and thus concluded an assessment of whether he is unable to continue his past relevant vocational work was "necessary."

After denials of an April, 2007 and April, 2010 application for disability, and a denial of reconsideration, Feretti requested a hearing, which was held on January 26, 2013 before the Hon. Robert A. DiBicarro, Administrative Law Judge ("ALJ"). Feretti testified that "chronic swelling of [his] knee joints prevented him from working" at his then administrative position with the NYPD. Feretti further testified that even sedentary or light jobs would be difficult for him because his "knees swell up on any given day, no matter what [he is] doing" and either he has "to start taking more pain medication, or [he has] to stop doing what's causing the swelling. And then do all the things that the doctors have told [him] to do to reduce swelling, whether it be recline or whatever . . . get[s] my feet elevated." Feretti also stated that if necessary he could do household chores such as vacuuming and mowing the lawn but would "pay the price for it." When asked by the ALJ if he could sit for 30 minutes, Feretti testified that "he can't sit forever.

4

[He] could sit for 30 minutes, and it's going to vary. You know it's hard to put a quantitative, you know, time frame."

On May 25, 2013, ALJ DiBicarro rendered a decision denying Feretti's application.

Based on the evidence of record, the ALJ found that "through the date last insured, the plaintiff had the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b), except that he is limited to four hours standing/walking in an eight hour work day." Specifically ALJ DiBacarro concluded that "the claimant's written disability reports and his January 2012 testimony are only partially credible. His reports that he had to retire from police work several years ago, matches the records sent to his police departments by his doctors. To the extent that he alleges current disabling knee symptoms on a weekly basis, from sedentary or light jobs, that allegation is contradicted by his specialists' surgical, x-ray, therapy, and examination reports."

On March 29, 2013, The Appeals Council issued a notice to Feretti denying his request for review and thereby making the ALJ's decision the final decision of the Commissioner.  On May 24, 2013, Feretti filed the complaint in this case.  Feretti has filed a motion to reverse or remand the Commissioner's decision and the Commissioner has filed a motion to affirm his decision.

## STANDARD

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. Id.; Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and whether the decision is supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." Id.

6

<u>**DISCUSSION**</u>

**I.   The Social Security Act**

The Social Security Act establishes that benefits are payable to individuals who have a disability.  42 U.S.C. § 423(a)(1).  "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ." 42 U.S.C. § 423(d)(1).

In order to be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).  "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."[5]  <u>Id.</u>

**II.  Alleged Errors**

Feretti has identified four general areas of alleged error. Feretti argues 1) that the ALJ improperly decided his case under the Medical-Vocational Guidelines, also known as "the Grids;"[6] 2)

---

[5]  The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives"; 2) "whether a specific job vacancy exists for [the claimant]"; or 3) "whether [the claimant] would be hired if he applied for work."  <u>Id.</u>

[6] The Grids are contained in 20 C.F.R. Part 404, Subpart P, Appendix 2.

that "the ALJ failed to add to the administrative record all of the records which he should have considered;" 3) the ALJ failed to properly follow the promulgated regulations regarding the evaluation of medical opinions in 20 C.F.R. Sec. 404.1527, commonly known as the "treating physician rule."; and 4) that the ALJ failed to make specific findings concerning Sections 1.02A and 1.03 of the Code of Federal Regulation's Listing of Impairments.

### A. RFC and the Medical-Vocational Guidelines

Feretti first argues that if a "claimant can perform some light work but not a full range of light work, his case cannot be decided under the Grids," and the ALJ recognized that Feretti "cannot perform a full range of light work, because in describing Mr. Feretti's residual functional capacity (RFC), the ALJ added . . .  'that he is limited to four hours standing/walking in an eight hour day.'" Specifically, Feretti argues that the "ALJ himself said that Mr. Feretti could not perform any light exertion jobs which require standing or walking for more than four hours a day", but despite this finding, "the ALJ proceeded to decide Mr. Feretti's case under the Grids . "

The Commissioner responds that "the ALJ's RFC determination that the plaintiff can perform light work that does not require more than four hours of standing/walking per eight-hour workday

8

compels the conclusion that plaintiff can perform a full range
of sedentary work." Specifically, the Commisioner argues that
"[t]he agency carried its burden . . . because, as the ALJ
noted, the agency's Medical-Vocational Guidelines explain that
substantial numbers of unskilled sedentary jobs exist in the
national economy." As to the RFC determination itself, the
Commissioner notes that it "is supported by, *inter alia*, the
opinions of two state agency reviewing physicians; treatment
notes that indicate only mild to moderate limitation rather than
the severe limitation that plaintiff asserts; and
inconsistencies between the treatment notes and plaintiff's
testimony, which the ALJ reasonably found to undermine
plaintiff's credibility."[7]

One's RFC is "what an individual can still do despite his
or her limitations." Melville v. Apfel*,* 198 F.3d 45, 52 (2d
Cir.1999). "Ordinarily, RFC is the individual's maximum
remaining ability to do sustained work activities in an ordinary
work setting on a regular and continuing basis, and the RFC
assessment must include a discussion of the individual's
abilities on that basis. A 'regular and continuing basis' means

---

[7] The commissioner notes that "[t]he ALJ's RFC determination is more favorable
to plaintiff's claim of total disability than the opinions of state agency
reviewing physicians Drs. [Maria] Lorenzo and [Joseph] Connolly, in that
those  physicians opined that plaintiff can perform light work that involves
standing/walking for about six hours in an eight-hour workday."

8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

"State agency medical and psychological consultants ... are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." Tyson v. Astrue, 2010 WL 4365577 (D. Conn. June 15, 2010) report and recommendation adopted, 2010 WL 4340672 (D. Conn. Oct. 22, 2010)(citing 20 C.F.R. § 404.1527(f)(2)(I)). "As the Second Circuit has held, the opinions of non-examining sources can override the treating sources' opinions provided they are supported by evidence in the record." Id. (citing Schisler v.. Sullivan, 3 F.3d 563, 567 (2d Cir.1993)).

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

"If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

The two state agency reviewing physicians, Lorenzo and Connolly, stated that the April 2010 x-rays of Feretti show "mild to moderate [osteoarthritis]."

The ALJ concluded that Feretti had the capacity to perform a full range of light work. The ALJ noted that Feretti relies heavily on Dr. Stein's diagnosis of osteoarthritis in 2010 and on his estimate that sitting, standing and walking are limited to two hours per day. However, the ALJ found that "[t]here are numerous specific clinical findings which contradict Dr. Stein's opinion." The ALJ specifically notes that after Feretti's February 2001 incident, "Dr. Rodeo noted no abnormalities on x-rays of the right knee, and [Feretti] reported to Dr. Rodeo it was slowly improving. He returned to duty."

The ALJ also noted several other inconsistencies: 1) Feretti's testimony about swelling in his knee, though Dr. Stein's notes indicate a lack of swelling in his knee; 2) Feretti's testimony about not taking pain medication because of side effects, though statements by Dr. Stein provided other reasons for not taking pain medication; 3) Feretti's testimony about the osteoarthritis consistently being worse since 2010 or earlier, with major limitations of sitting, standing, or walking, though Dr. Stein's notes indicate the overall severity was "moderate" in 2010 and "mild to moderate" in 2012. Additionally, updated, detailed functional assessments by Drs.

Stein and Rodeo corroborate the moderate nature of Feretti's original injuries; and 4) Feretti's testimony that he could not say whether he could sit for more than one-half hour at a time, though he has traveled by car from Trumbull, Connecticut to Floral Park, New York on numerous occasions for treatment, which would require sitting for at least an hour.

The court concludes that substantial evidence supports the ALJ's conclusion that Feretti had the RFC to perform a range of light work, except that he is limited to four hours standing/walking in an eight hour day, and that such a conclusion is not improper under the Medical-Vocational Guidelines because it is consistent with the conclusion that the plaintiff can perform a full range of sedentary work and that unskilled sedentary jobs exist in the national economy.

**B. Administrative Record**

Feretti next argues that "his Attorneys were not able to obtain essential documents and records which were in Defendant's sole and exclusive possession, and they did not obtain and submit records from a number of other health care providers who are mentioned in the Administrative Record." Specifically, Feretti argues that "the ALJ did not obtain, add to the Administrative Record, or review, many of the available records and evidence, even though the ALJ was aware of, or should have been aware of, the existence of those records, and even though

the ALJ had an obligation to complete the Administrative Record by obtaining those additional documents and records." Feretti argues that the ALJ's references to "the entire record" or "all the evidence" does not support a finding of disability because such an assertion "is not supported by substantial evidence because so many reports and records are not available for review, many of those 'missing' records support the conclusion that Mr. Feretti is disabled, and the others are very likely to support the same conclusion."

In response, the Commissioner argues that the agency fulfilled its duty to develop the record. Specifically, the Commissioner argues 1) the agency was not legally required to incorporate the plaintiff's prior claim file into the record for the instant case;[8] 2) the agency was not required to obtain a second RFC opinion from Dr. Stein;[9] and 3) the agency was not required to obtain a January 2004 letter form Dr. Rodeo or additional physical therapy records.[10]

---

[8] The Commissioner argues this is because "the agency's finding that plaintiff was not disabled prior to July 1, 2007 is now unreviewable based on the doctrine of *res judicata*" and the SSA's "Hearings, Appeals, and Litigation Law Manual ("HALLEX") . . . is not codified in statute, regulation, or even a Social Security Ruling, is not binding upon the agency, and has no legal force."

[9] The Commissioner states that there is no support for the Feretti's argument that the ALJ believed a second RFC opinion from Dr. Stein was essential and, furthermore, the plaintiff has not, nor even attempted "to demonstrate that a new RFC opinion from Dr. Stein would have helped his case."

[10] The commissioner argues the "plaintiff has not demonstrated prejudice here as required by *Shinseki*, 556 U.S. at 396, and *Perez*, 77 F.3d at 48, because

"When an unsuccessful claimant files a civil action on the ground of inadequate development of the record, the issue is whether the missing evidence is significant." Santiago v. Astrue, 2011 WL 4460206 (D. Conn. Sept. 27, 2011)(citing Pratts v. Chater, 94 F.3d 34, 37–38 (2d Cir.1996). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v.. Sanders, 129 S.Ct. 1696, 1706 (2009).

Here, as the ALJ noted, the case at hand does not reopen the merits of Feretti's July, 2007 claim. Even were the court to find persuasive Feretti's argument that the SSA violated its own internal rules by not incorporating all files associated with the 2007 application,  Feretti only makes a general argument that it is "equally possible" that the consultative examination report in his 2007 DIB application may or may not support his argument.  Thus, he has not met his burden with respect to this argument.

### C. Treating Physician Rule

Feretti next argues that the ALJ failed to properly follow the promulgated regulations regarding the evaluation of medical opinions in 20 C.F.R. Sec. 404.1527, commonly known as the "treating physician rule."  Specifically, Feretti argues that "[a]n ALJ is obligated to determine the correct amount of weight

---

he has not explained what Dr. Rodeo's actual letter would reveal that would be helpful to his case."

14

to be given to a treating physician's opinion, and to state explicitly what that amount is", but in Feretti's case "the ALJ did not say what amount of weight he gave to Dr. Stein's opinion."

The Commissioner responds that the ALJ's decision comports with the treating physician rule because "the ALJ has discretion to weigh all of the factors laid out at 20 C.F.R. §§ 404.1527(c)(1)-(6), with no single factor being dispositive" and, moreover, the opinion of a state agency reviewing physician can override treating physicians' opinions where, as here, the reviewing physician's opinion is supported by evidence in the record." Specifically, the commissioner argues that "[i]n this case, the ALJ recognized that, '[i]n general,' under SSR 96-2p, the opinions of treating physicians 'receive more weight' than the opinions of reviewing physicians . . ., but the ALJ discounted Dr. Stein's opinion because it was not 'supported by consistent clinical findings; by the frequency and nature of the claimant's treatment and surgeries; [or] by credible testimony as to the claimant's activities from 2004 to 2011' . . ., and because 'the claimant's level and frequency of treatment are much more limited than counsel's and Dr. Stein's [RFC] estimate would suggest.'" The Commissioner argues that the ALJ need not "employ certain magic words in describing the amount of weight given to a physician's opinion" but simply "provide good reasons

to explain his weighing of such opinions" and make clear the
weight given to the opinions.

"With respect to 'the nature and severity of [a claimant's]
impairment(s),' 20 C.F.R. § 404.1527(d)(2), 'the SSA recognizes
a "treating physician" rule of deference to the views of the
physician who has engaged in the primary treatment of the
claimant.'" <u>Burgess v. Astrue</u>, 537 F.3d 117, 128 (2d Cir.
2008)(quoting <u>Green-Younger v. Barnhart</u>, 335 F.3d 99, 106 (2d
Cir. 2003)).

"A reviewing court 'may not accept appellate counsel's *post
hoc* rationalizations for agency action.'"  <u>Snell v. Apfel</u>, 177
F.3d 128, 134 (2d Cir. 1999)(quoting <u>Burlington Truck Lines,
Inc. v. United States</u>, 371 U.S. 156, 168 (1962).

Though treating physicians are given deference, "State
agency medical and psychological consultants and other program
physicians, psychologists, and other medical specialists are
highly qualified physicians, psychologists, and other medical
specialists who are also experts in Social Security disability
evaluation."  20 C.F.R. § 404.1527(e)(2)(i).

Here, the ALJ acknowledges that treating physicians
"receive more weight than the chronological summaries of the
nonexamining consultants of the CT Agency."  However, the ALJ
then concluded that the treating physician's estimated
restrictions in 2010, lacked support from "clinical findings: by

the frequency and nature of the claimant's treatment and surgeries: and by credible testimony as to the claimant's activities from 2004 to 2011."

As noted by the ALJ, Feretti had "only one-day surgeries, followed by physical therapy. His May 2003 surgery, per Dr. Rodeo, was to improve extension in his left knee joint, not because he could not extend or flex it at all." As noted above, Drs. Stein and Rodeo's reports, contained in the administrative record, do not indicate that Feretti will need future surgery in either knee or that he will need to undergo physical therapy. This evidence, along with Dr. Stein's recent diagnoses of Feretti's knee conditions as "mild" and "moderate," support the ALJ's conclusion that Feretti's allegation of "current disabling knee symptoms on a weekly basis, from sedentary or light jobs . . . is contradicted by his specialists' surgical, x-ray, therapy, and examination reports."

The court concludes that the ALJ provided sufficient reasoning in explaining the weight given to the treating physicians and that the reviewing physicians' opinions were supported by evidence in the record.

### d. Listed Impairments

Feretti finally argues that "[h]aving two listed impairments means that [he] is incapable of any gainful activity." Specifically, Feretti argues that he "has

17

Osteoarthritis and Internal Derangement of both knees, with all the required clinical signs and symptoms of a disorder which meets the Listing of Section 1.02A, including chronic knee pain which is described in every medical record, instability or laxity, stiffness, abnormal gait and inability to ambulate for more than two hours total during a day." Feretti argues that he "also meets the Listing of Section 1.03, because he has undergone two surgeries on his left knee but has not recovered the ability to ambulate effectively." Feretti argues that his case "should be remanded so that the ALJ can make specific findings concerning Sections 1.02A and 1.03 of the Listing of Impairments, and can explain which criteria of the Listing the ALJ believes are not described in the medical records."

The commissioner responds that a "reasonable mind" could reach the ALJ's conclusion that plaintiff does not satisfy any listing, meaning that the conclusion is supported by substantial evidence. Specifically, the commissioner notes that the state agency reviewing physicians are highly qualified, and did "not report the level of severity required for the listings." Moreover, the plaintiff argues, Feretti "has not demonstrated an "'inability to ambulate effectively' as defined at 20 C.F.R. Part 404, Subpt. P, App. 1 § 1.00(B)(2)(b)(1), as he cites to no evidence of an inability to independently ambulate without the 'use of a hand-held assistive device(s) that limits the

18

functioning of both upper extremities.'" The commissioner argues
that the ALJ sufficiently detailed this fact by "explain[ing]
that the state agency reviewing physicians and plaintiff's
treating physicians did not indicate that any listing was met,
and in particular did not endorse the need for two assistive
devices such as canes."

"For a claimant to show that his impairment matches a
listing, it must meet all of the specified medical criteria. An
impairment that manifests only some of those criteria, no matter
how severely, does not qualify." Sullivan v. Zebley, 493 U.S.
521, 530 (1990).

20 C.F.R. § 404, Subpt. P, App. 1 §  1.02A, requires
"[m]ajor dysfunction of a joint(s) (due to any cause):
Characterized by gross anatomical deformity (e.g., subluxation,
contracture, bony or fibrous ankylosis, instability) and chronic
joint pain and stiffness with signs of limitation of motion or
other abnormal motion of the affected joint(s), and findings on
appropriate medically acceptable imaging of joint space
narrowing, bony destruction, or ankylosis of the affected
joint(s). With . . . [i]nvolvement of one major peripheral
weight-bearing joint (i.e., hip, knee, or ankle), resulting in
inability to ambulate effectively, as defined in 1.00(B)(2)(b)."

"Inability to ambulate effectively means an extreme
limitation of the ability to walk; i.e., an impairment(s) that

19

interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation <u>without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities</u>." 20 C.F.R. Part 404, Subpt. P, App. 1 § 1.00(B)(2)(b)(1)(emphasis added).

20 C.F.R. § 404, Subpt. P, App. 1 § 1.03 requires "[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00(B)(2)(b), and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset."

Both state agency reviewing physicians, Lorenzo and Connolly's, medical dispositions did not find Feretti met any listed impairment and concluded that an assessment of whether he is unable to continue his past relevant vocational work was "necessary."[11]

---

[11] "[I]f the claimant suffers from a severe impairment but one not listed as presumptively disabling," an analysis of his ability to continue past relevant vocational work must be conducted and, if necessary, an analysis of his ability to perform some less demanding, but gainful, employment must also be conducted.  <u>Ferraris v. Heckler</u>, 728 F.2d 582, 584 (2d Cir. 1984). (citing <u>Heckler v. Campbell</u>, 461 U.S. 458, 460 (1983)).

Neither treating physicians Stein nor Rodeo noted that Feretti's level of severity for his bilateral knee impairments required a cane or other assistive device to walk on level ground.

The court concludes that, when considering the opinions of Lorenzo and Connolly, which were uncontradicted by Rodeo and Stein, the ALJ's decision that Feretti did not satisfy any listed impairment in 20 C.F.R. Part 404 was one that could be reached by a reasonable mind and was supported by substantial evidence.

<u>**CONCLUSION**</u>

Feretti' motion for an order reversing or remanding the Commissioner's decision (document no. 11) is DENIED and the Commissioner's motion to affirm that decision (document no. 14) is GRANTED.

It is so ordered this 8th day of August 2014, at Hartford, Connecticut.

/s/
_____
Alfred V. Covello, U.S.D.J.
